UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KATHLEEN CLAYTON,                           Case No. 1:12-cv-79

        Plaintiff,                           Barrett, J.
                                            Bowman, M.J.
  v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Kathleen Clayton filed this Social Security appeal in order to challenge the Defendant's findings that she is not disabled.  *See* 42 U.S.C. §405(g).  Proceeding through counsel, Plaintiff presents a single claim of error.  For the reasons explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

    **I. Summary of Administrative Record**

On July 14, 2008, Plaintiff filed an application for Disability Insurance Benefits (DIB) alleging a disability onset date of October 1, 1996, due to physical and mental impairments; however, Plaintiff amended her onset date to January 1, 2000 at the administrative hearing. (Tr. 129, 157).  After Plaintiff's claims were denied initially and upon reconsideration, she requested a hearing *de novo* before an Administrative Law Judge ("ALJ").  An evidentiary hearing was held on July 21, 2010, at which Plaintiff appeared with counsel.  (Tr. 26-72).  A vocational expert, George Parsons, was also present and testified.  On August 27, 2010, ALJ Deborah Smith denied Plaintiff's application in a written decision.  (Tr. 9-25).

1

The record on which the ALJ's decision was based reflects that Plaintiff was 48 years old at the time of the ALJ's decision and a high school graduate. (Tr. 34). Plaintiff had past relevant work as a customer service clerk, an accounts payable clerk, and a payroll clerk. (Tr. 19).

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "a back disorder leading to surgery in July 2000, depression, and supraventricular tachycardia with a congenital right bundle branch block." (Tr. 15). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. The ALJ determined that Plaintiff retains the following residual functional capacity ("RFC") to perform medium work and should avoid work that was highly complex and had strict production quotas. (Tr. 17-18). The ALJ further determined that, even if Plaintiff was limited to sedentary work, as defined in 20 CFR 404.1567(a), she would still not be disabled, even if she had to alternate between sitting and standing every half hour. (Tr. 17).

Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff is able perform her past relevant work. (Tr. 19-20). Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to DIB. *Id*.

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff

argues that the ALJ erred in formulating Plaintiff's RFC. Upon close analysis, I conclude that this asserted error does not require reversal or remand.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for DIB a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion .

3

> . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). Thus, a plaintiff seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**B.  The ALJ's RFC Assessment is Substantially Supported**

The pertinent period of time at issue concerns Plaintiff's work abilities and limitations between January 1, 2000 until September 20, 2002.  To establish her claim for disability benefits, Plaintiff was required to establish that she was disabled on or before September 20, 2002, the date her insured status expired for purposes of Disability Insurance Benefits.  *See Garner v. Heckler*, 745 F.2d 383, 390 (6th Cir. 1984). While plaintiff was not required to prove she was disabled for a full twelve months prior to the expiration of her insured status, she was required to prove "the onset of disability" prior to the expiration of her insured status and that such disability lasted for a continuous period of twelve months.  *See Gibson v. Secretary*, 678 F.2d 653, 654 (6th Cir. 1982); 42 U.S.C. § 423(d)(1)(A).

In the present case, the ALJ determined that Plaintiff had certain severe impairments, but that these impairments were only marginally severe, and that despite these limitations, Plaintiff remained able to work.  (Tr. 17-18). The ALJ concluded that, despite Plaintiff's impairments, she retained the residual functional capacity ("RFC") to perform a range of medium work, limited only by the determination that she should have avoided work that was highly complex and which had strict production requirements. (Tr. 17-18). The ALJ further determined that, even if Plaintiff was limited to sedentary work, as defined in 20 CFR 404.1567(a), she would still not be disabled, even if she had to alternate between sitting and standing every half hour.  (Tr. 17).

Plaintiff, however, asserts that the ALJ's RFC finding is not substantially supported.  Specifically, Plaintiff argues that in formulating her RFC, the ALJ "grossly misstated the severity" of Plaintiff's back and mental impairments and improperly

5

focused on the areas of the record that did not show much functional limitation or pathology, and "failed to mention the remainder of the evidence" (Doc. 13 at 14-15). Plaintiff also appears to challenge the ALJ's hypothetical question to the VE. Plaintiff's contentions will be addressed in turn.

      1.   *Evaluation of Plaintiff's impairments*

With respect to Plaintiff's back impairments, the ALJ found that Plaintiff did well after having back surgery in July 2000. (Tr. 15). The ALJ noted that examination notes from Dr. Tolber from August 2000, indicated that Plaintiff was "doing very well with complete resolution of her right leg pain" and she was ready to increase her activities. (Tr. 15). The ALJ also noted that a September MRI of the cervical spine yielded normal results. (Tr. 16). Additionally, the ALJ's decision indicates that an MRI of the cervical spine from July 2003 showed mild to severe foraminal stenosis from C3-7. The ALJ noted however, that this MRI was performed nearly a year after her insured status expired.

Plaintiff argues that that ALJ selectively relied on portions of the record that "did not show much pathology or functional limitations and failed to mention the remainder of the evidence." (Doc. 13). Plaintiff asserts that her pain did not completely resolve after back surgery as the treatment notes further indicates that Plaintiff was still taking "one-half Methadone tablet a day and is having some difficulty discontinuing that." (Tr. 326). Thus, Plaintiff asserts that the fact that she continued taking pain medication supports the contention that "she continued to experience pain in her back, and thus the lumbar degenerative changes remained a several and functionally limiting condition even after her surgery." (Doc. 13 at 14).

6

Plaintiff then cites to lumbar MRIs (both from 2000 and 2009) showing that Plaintiff had, in addition to the herniated disc at L5-S1, a severe disc extrusion at L3-4 which was creating a mass effect on Plaintiff's thecal sac. (Tr. 373, 492). Plaintiff further notes that an EMG in February 2008 revealed a chronic or previous right L5 radiculopathy. (Tr. 494) In light of this evidence, Plaintiff asserts that the ALJ's finding that Plaintiff had the residual functional capacity to perform medium work through the date last insured is inconsistent with Dr. Tolber's records. Plaintiff's assertion lacks merit.

It is well-established that a mere diagnosis or catalogue of symptoms does not indicate the functional limitations caused by the impairment. *See Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146,151 (6th Cir.1990) (diagnosis of impairment does not indicate severity of impairment). Here, Plaintiff has failed to show any functional limitations associated with such impairments. Furthermore, the majority of the records cited by Plaintiff were obtained many years after the date she was last insured. As noted above, Plaintiff also had the burden of showing that she became disabled prior to her DLI of September 30, 2002. *See Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990) (citing *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988) (claimant must show that she became disabled on or before her date last insured)). Here, Plaintiff has failed to establish that the ALJ improperly evaluated the evidence relating to her back impairments. Accordingly, the ALJ's decision is substantially supported in this regard.

Next, Plaintiff contends that the ALJ's RFC finding failed to properly accommodate her depression and anxiety. As detailed the ALJ found Plaintiff's depression to be a severe but not disabling impairment. The ALJ's decision indicates

7

that Plaintiff's depression was noted in March 2000 to be stable and controlled by Effexor. (Tr. 16).  The ALJ noted that Plaintiff was hospitalized overnight in June 2002 due to suicidal ideation after a fight with her husband.  The ALJ further noted that Plaintiff had never received mental health treatment even though it was referred in 2001. (Tr. 19).

Plaintiff argues that the ALJ selectively focused on Plaintiff's failure to seek mental health treatment and improperly determined that her depression was stable. Notably, Plaintiff asserts that the ALJ failed to consider that the reason Plaintiff had not obtained mental health treatment was due to health insurance coverage.  Contrary to her assertion, the record indicates that the ALJ explicitly cited to the emergency room notes from her hospitalization for a suicide attempt.  (Tr. 19).  The ALJ noted that the report indicates that she was referred for psychiatric care a year ago, but never followed up.  The next sentence in the report cited by the ALJ, noted that Plaintiff stated "Insurance companies make it real hard."  (Tr. 238).  Thus, the fact that the ALJ did not discuss Plaintiff's statement relating to insurance does not mean that the ALJ failed to consider the evidence.  As noted by the Commissioner, "it is well settled that 'an ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.'"  *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507-08, 2006 WL 305648, *8-9 (6th Cir. Feb. 9, 2006). Furthermore, although Plaintiff's contends that she failed to obtain mental health treatment due to lack of insurance the record contains no evidence that she ever sought free or low-cost mental health treatment.  Accordingly, Plaintiff contention is overruled in this regard.

Plaintiff further asserts that the record indicates that Plaintiff's depression was not "controlled" citing to her complaints of increased depression in April 2000 and continued problems, increased Effexor dosage in September 2000 and her prescription for Prozac in November 2000. (Tr. 290, 294-95, 322). This evidence, however, fails to establish any functional limitations associated with her depression. More importantly, the record contains substantial evidence in support of the ALJ's determination that Plaintiff suffered from recurrent major depression, which was controlled when Plaintiff was taking her medications appropriately. (Tr. 239, 243, 286-87, 289-90, 294-98, 322).

Last, Plaintiff notes that the ALJ's primary RFC assessment, limiting Plaintiff to medium exertion, is not supported by a medical opinion. As noted above, the state agency reviewing physicians determined there was insufficient evidence to determine Plaintiff's work limitations during the period between January 2000 and September 30, 2002. (Tr. 404-417, 418, 589). The only other opinion evidence of record is that of Dr. Martin, Plaintiff's treating family physician. In November 2000, Dr. Martin completed a report detailing Plaintiff's functional limitations wherein he assigned functional limitations compatible with a reduced range of sedentary work. (Tr. 323-24). Thus, Plaintiff asserts that the ALJ improperly substituted her own medical judgment for that of treating physician when she determined that Plaintiff was capable of performing a range of medium exertional work.

However, as previously found by this Judicial Officer and as noted by the Commissioner, the ALJ is not required to adopt verbatim the opinion of any particular doctor. *Hericks v. Astrue*, 2012 WL 161105 (S.D. Ohio Jan. 19, 2012) (Bowman, MJ). Rather, it is the province of the ALJ to coalesce all of the record evidence in making her

RFC determination. *Id.* Such is the case here. Notably, in formulating Plaintiff's RFC, the ALJ's decision shows that she considered the medical evidence of record during the relevant period, the opinions of Dr. Martin and the state agency physicians, as well as Plaintiff's testimony and reported activities.[1] The ALJ properly evaluated the record evidence and provided a clear explanation for the conclusions reasoned. In light of the foregoing the undersigned finds that the ALJ reasonably concluded that Plaintiff could perform medium work.[2]

    2. *Credibility*

Plaintiff also appears to challenge the ALJ's credibility finding. (Doc. 13 at 13). It is the province of the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers v. Commissioner of Social Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citations omitted). In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994). The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." *Hurst v. Sec. of HHS*, 753 F.2d 517, 519 (6th Cir. 1985). In this regard, Social Security Ruling 96-7p explains:

---

[1] The record indicated that Plaintiff was able to work on her family farm (filling feed buckets and chasing chickens) (Tr. 42, 285, 314), ride horses (Tr. 571), cook 3-4 meals per week (Tr. 42, 314) and travel (Tr. 288).

[2] In addition, the vocational expert testified that, even if the ALJ adopted the RFC finding of Dr. Martin, Plaintiff still could have performed her past relevant work as a customer service clerk. (Tr. 68-70)

> In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record.  An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.

SSR 96-7p.

In addition, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Id.  The ALJ's credibility decision must also include consideration of the following factors:  1) the individual's daily activities; 2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  See 20 C.F.R. §§ 404.1529(c) and 416.929(c); SSR 96-7p.

11

While an ALJ may properly consider a Plaintiff's inconsistent statements and other inconsistencies in the record, the ALJ must also consider other factors listed in SSR 96-7p, and may not selectively reference a portion of the record which casts Plaintiff in a capable light to the exclusion of those portions of the record which do not. *See Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240-41 (6th Cir. 2002). Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, her testimony, and other evidence. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d at 392.

Upon close inspection, the undersigned finds that the ALJ properly considered the requisite factors in making her credibility determination. Here, the ALJ found Plaintiff's credibility to be poor, noting several inconsistences with Plaintiff's reported activities and her allegations of disability. (Tr. 18-19). With respect to Plaintiff's daily living activities, the ALJ noted that Plaintiff was able to care for the chickens and goats on her farm (Tr. 18, 42, 285, 314), prepare dinner 3-4 times per week (Tr. 19, 314), and occasionally go shopping (Tr. 314). Plaintiff also rode horses during the relevant time period (Tr. 19, 571) and traveled. (Tr. 288).

Additionally, Plaintiff testified that she stopped working in the mid-1990s because of the birth of her third child and because her husband started a new business, not because of her impairments. (Tr. 18, 38-9, 51). The ALJ noted that the record showed non-compliance; namely that Plaintiff periodically stopped taking her anti-depressant medications and her heart medications. (Tr. 19, 296, 337). The ALJ further noted that although Plaintiff denied (both to her doctors and at the hearing) the use of recreational

drugs (Tr. 19, 312), the record contained evidence that she tested positive for marijuana when she was admitted to the emergency room in 2002. (Tr. 19).

Based on the foregoing, the undersigned finds that the ALJ's decision adequately sets forth the reasons for her credibility finding and shows he considered the required factors in determining Plaintiff's credibility. *See* 20 C.F.R. § 416.929(c). In light of the ALJ's opportunity to observe Plaintiff's demeanor, the ALJ's credibility finding is entitled to deference and should not be discarded. *Kirk*, 667 F.2d at 538. *See also Cruse v. Commissioner*, 502 F.3d 532, 542 (6th Cir. 2007); *Walters v. Commissioner*, 127 F.3d 525, 531 (6th Cir. 1997); *Gaffney v. Bowen*, 825 F.2d 98, 101 (6th Cir.1987). Accordingly, the Court finds substantial evidence supports the ALJ's credibility finding in this matter.

3. *Alleged Vocational Errors*

Citing *Ealy v. Commissioner*, 594 F.3d 504 (6th Cir. 2009), Plaintiff further asserts that the ALJ's RFC and hypothetical question failed to properly accommodate Plaintiff's moderate limitations on persistence and pace. In *Ealy*, the Sixth Circuit found that where medical source opinions specifically limited Plaintiff's ability to sustain attention and imposed restrictions in pace, speed and concentration, the ALJ's "streamlined" hypothetical omitting those restrictions was insufficient. *Id*. Notably, however, several post-*Ealy* decisions declined to adopt a bright line rule that a limitation to "simple repetitive tasks" in an RFC and hypothetical to the VE is not adequate to address a claimant's moderate impairment as to concentration, persistence, and pace. *See Steed v. Astrue*, No. 4:11CV204, 2012 WL 1097003, at *9 (N.D. Ohio Mar. 30, 2012); *Jackson v. Comm'r of Soc. Sec.*, No. 1:10CV763, 2011 WL 4943966, at *4 (N.D.

13

Ohio Oct.18, 2011). Here, no medical source imposed any restrictions relating to pace, speed and concentration, as in *Ealy*, and Plaintiff offers no additional evidence or argument in support of this contention. Accordingly, Plaintiff's assertion should be overruled in this regard.

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be **CLOSED.**

      *s/Stephanie K. Bowman*
      Stephanie K. Bowman
      United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KATHLEEN CLAYTON,                   Case No. 1:12-cv-79

      Plaintiff,                        Barrett, J.
                                         Bowman, M.J.
  v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

15